≋JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Besslindora Goree

## DEFENDANTS

Premier CC, Inc.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Montgomery
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Cotlar & Cotlar, 23 W. Court St., Doylestown, PA 18901

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ❑ 1   U.S. Government Plaintiff
- ❑ 2   U.S. Government Defendant
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ❑ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ☒ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | **IMMIGRATION** | | ❑ 900Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | ❑ 463 Habeas Corpus - | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | Alien Detainee | | ❑ 950 Constitutionality of |
| | Other | | ❑ 465 Other Immigration | | State Statutes |
| | ❑ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ❑ 2   Removed from State Court
- ❑ 3   Remanded from Appellate Court
- ❑ 4   Reinstated or Reopened
- ❑ 5   Transferred from another district (specify)
- ❑ 6   Multidistrict Litigation
- ❑ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 2000(e) and 29 USC 621 and 43 PS 955(a)

Brief description of cause:
Employment discrimination; failure to hire

## VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
05/13/2010

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Law Office of Cotlar & Cotlar
Steven A. Cotlar, Esq./ Attorney I.D. #01881
Andrew D. Cotlar, Esq. /Attorney I.D. #204630
23 West Court Street
Doylestown, PA 18901
(215)-345-7310

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Besslindora Goree, | CIVIL ACTION |
| *Plaintiff* | No. _____ |
| VS. | |
| Lower Merion School District | JURY OF 12 DEMANDED |
| *Defendant* | |

## COMPLAINT

### I.   INTRODUCTORY STATEMENT

1. Plaintiff seeks redress for race and age discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et. seq., and parallel violations of the Pennsylvania Human Relations Act (43 P.S. § 955(a)).

2. Pursuant to 42 U.S.C. §§1981a and 1983 and related federal laws, Plaintiff seeks an order for back pay and compensation from loss of benefits as well as front pay, damages for emotional distress, punitive damages, attorney's fees and any and all other relief including but not limited to reinstatement that this Court deems proper.

3. Pursuant to Eshelman v. Agere Systems, Inc., 2009 U.S. App. LEXIS 1947, 36-

1

38 (3rd Cir. 2009), and this court's equitable powers, Plaintiff also seeks pre-judgment interest to be assessed on back pay as well as an additional award to offset the tax consequences of a lump sum payment of back pay.

## II.   JURISDICTION AND VENUE

4. Jurisdiction of this Court is properly invoked pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e-5(f)(1), (3)), Sections 7(c) and (d) of the Age Discrimination in Employment Act (29 U.S.C. §§ 626(c-d)), and 28 U.S.C. § 1331 (Federal question jurisdiction).

5. Jurisdiction of this Court is also properly invoked, pursuant to its supplemental jurisdiction (28 U.S.C. § 1367) over the claims of race, national origin and age discrimination under Section 5(a) of the Pennsylvania Human Relations Act (43 P.S. § 955(a)).

6. Venue is proper, pursuant to Section 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5(f)(3)), as the discrimination occurred when Plaintiff was employed by Defendant located in the Eastern District of Pennsylvania.

## III.   ADMINISTRATIVE EXHAUSTION

7. Pursuant to Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000e-5(f)(1)), Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about September 1, 2009 and contemporaneously with the Pennsylvania Human Relations

2

Commission in accordance with the work sharing arrangement between the agencies. A true and correct copy of the EEOC Charge is attached at **EXHIBIT A** hereto an incorporated herein.

8. Plaintiff received a Notice of Dismissal and Right to Sue from the EEOC on April 30, 2010 concerning the ADEA claims and a Right to Sue from the Department of Justice on May 7, 2010 concerning the Title VII claims. A true and correct copy of the above is reproduced at **EXHIBIT B** hereto and incorporated herein.

## IV.   PARTIES

9. Plaintiff, Besslindora Goree, is a 47-year-old African-American female, who resides at 200 N. Wynnewood Avenue, Apt. B213, Wynnewood, PA 19096.

10. Defendant, Lower Merion School District, is a local school district with offices at 301 E. Montgomery Avenue, Ardmore, PA 19003. Defendant has more than 15 employees.

## V.   FACTUAL ALLEGATIONS[1]

11. Besslindora Goree is a 47-year-old African-American female and was hired on August 18, 2008 at a salary of $79,491.00 per year by the Lower Merion School District (LMSD) as a long-term substitute to teach business and information technology courses classes.

---

[1] Pursuant to the newly enhanced pleading standards announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Ashcroft v. Iqual, 129 S. Ct. 1937, 173 Led. 2d 868 (2009) and its application to employment discrimination cases in the U.S. Court of Appeals for the Third Circuit in Gaston v. United States Postal Service, 2009 U.S. App. LEXIS 5673 (3rd Cir. 2009), Zimmer v. Secretary of Department of Homeland Security, 297 Fed. Appx. 88 (2008) and Wilkerson v. New Media Tech. Charter School, Inc., 522 F.3d 315 (3rd Cir. 2008), Plaintiff is setting forth a more detailed description of the facts in order to state a claim with enough factual matter to suggest the required elements and to raise the right to relief above the speculative level on the assumption that all the allegations are true.

12. Ms. Goree possesses a Masters in Business Administration (MBA) from DeSales University, a B.S. degree in business education from Gwynedd Mercy College, and a Pennsylvania Department of Education Business Education instructional II certificate.

13. Ms. Goree was recruited to move from her prior teaching position in Broward County, Florida and moved to Pennsylvania in specific reliance upon promises made by LMSD personnel that her long-term substitute position would result in long-term tenure-track employment with LMSD the next academic year.

14. The personnel who made these representations were Dr. Martha ("Marty") Yoder (Director of Human Resources), Steven Kline (Principal of Harriton High School), Lindy Matskow (Assistant Principal, Harriton High School), and Steven Barbado (Director of Curriculum).

15. Once at Harriton High School, Ms. Goree performed in her position in an exemplary fashion, garnering a large following among her students and among parents of her students who praised her teaching abilities.

16. Ms. Goree also volunteered for a number of activities and helped run the school store as well.

17. Ms. Goree was also the sponsor for the FBLA and Mock Trial club.

18. Moreover, Ms. Goree facilitated the creation of a partnership between Pennsylvania State University-Brandywine and the school district for a dual enrollment program, which was developed and implemented by Ms. Goree, to allow Harriton High School students to receive up to 13 college credits while enrolled, with four college courses being taught by a Penn State University

4

professor at Harriton High School during the school day.

19. Ms. Goree was so successful in facilitating this program that she recruited 17 students for the inaugural year when only 10 were required.

20. Throughout her tenure, Ms. Goree received nothing but exemplary reports upon observation of her teaching by her supervisor Dan Nerilli, Assistant Principal.

21. However, once hired as a long-term substitute, Ms. Goree was not provided with the usual support accorded Caucasian teachers.

22. For instance, unlike Caucasian teachers, she was not assigned an experienced teacher (a "buddy") to help her become familiar with district policies and procedures.

23. Other newly hired teachers who were not minorities were assigned such support.

24. Additionally, Ms. Goree was assigned approximately 150 students, while the Caucasian business teacher was assigned approximately 90 students.

25. And when one parent did complain about their child's grades, the Principal, Mr. Steven Kline, did not immediately support Ms. Goree's decisions but simply reassigned the child to another teacher, despite the school's policy of not changing teachers' student assignments.

26. Prior to becoming the principal of Harriton, Mr. Kline was the subject of a lawsuit alleging racial discrimination by an African-American teacher named Brenda Fortes at Boyertown Area School District.

27. In this case, Ms. Fortes alleged that Mr. Kline repeatedly used racial slurs and derogatory references and comments about African-Americans and replaced Ms. Fortes with a female Caucasian teacher with less education and experience.

5

This case concluded **with judgment being entered against Mr. Kline and others by consent**.  See, Fortes v. Boyertown Area School District, U.S. District Court for the Eastern District of Pennsylvania, Docket 2:06-cv-00878-LS (November 20, 2006) (document 31).

28. At Harriton High School, there were numerous racial incidents in which Mr. Kline was involved.

29. For instance, Ms. Carla Coleman, an African-American female guidance counselor, was verbally reprimanded for questioning Mr. Kline's eagerness to remove an African-American female student after an incident that occurred off-campus when school policy would have mandated an initial inquiry.  Thereafter, Ms. Coleman felt it necessary to meet with Kline only with a third party present.

30. Additionally, in 2006, Mr. Kline summarily replaced Hal Smith, a former ten-year veteran African-American math teacher and football coach, with a Caucasian man as football coach.  When asked for the reasons for this action, Mr. Kline informed Mr. Smith that he had used vulgar language towards students and did not care about the students, despite Mr. Smith's extensive participation as a math teacher, mentor and tutor for Harriton Students since 1996.  Mr. Smith's replacement continues to coach today despite numerous complaints from parents and students about his use of vulgar language.

31. The School District has also historically had problems with race relations and proper recruitment and retention of minority teachers.

32. In this regard, in 2001, the last time such figures were publicly announced, the school district hired only four new minority teachers with the number of minority

6

staff increasing from 5.7% in 1989 to a mere 7.5% in 2001.

33. These problems have caused concerned parents and community groups to form CARE (Committee to Address Race in Education) to address these concerns.

34. Additionally, race relations continue to be problematic at present in light of a controversial bussing program that has become the subject of a suit before this Court. See, Student Doe 1 et al v. Lower Merion School District, U.S. District Court for the Eastern District of Pennsylvania, Docket 2:09-cv-02095-MMB.  In this case, substantial evidence was brought forward that in passing the re-districting plan, the School District employees and School Board Members actively used race as a factor in making their decisions.

35. From this case the following statements were made concerning the racial atmosphere at Harriton High School in particular, where Plaintiff taught:

a. Plaintiff's exhibit 83, which is an email from Board Member Ebby (November 19, 2009) stated: "I think the redistricting is an opportunity to mix the population and to end the stereotyping of Harriton as an inferior school populated by elitists and racists."

b. Plaintiff's exhibit 52, which is an email from Board Member DiBonaventuro to Board Member Lorenz, stated that she "ha[s] been thinking about the diversity (or lack there of [sic]) issues at Harriton," and "believe[s] that moving any of the low income and African American students to Harriton when they can walk to L[ower] M[erion] simply creates an additional stressor that doesn't need to be there."

36. Importantly, since 2006, when Mr. Kline became Principal at Harriton, no African-

7

American teachers (other than Ms. Goree) have been hired at that school.

37. On May 19, 2009, Ms. Goree received formal notice that her temporary position would expire effective June 18, 2009.

38. On June 1, 2009, LMSD posted a position vacancy online for a tenure-track teacher of high school business classes—a position **identical** to the position Ms. Goree has filled as a long-term substitute.

39. This position required a business education instructional certificate, which Ms. Goree possessed. Ms. Goree immediately applied for the open position on June 2, 2009.

40. On July 6, she was called for an interview on the 7th at 1:30 P.M.

41. Because of the short notice, this was rescheduled for July 9 at 8:30 A.M.

42. When Ms. Goree arrived for the interview, the usual entrance to the facility near the Principal's office was locked.  Ms. Goree called the secretary on her cell phone and then walked to a secondary door in a few minutes.

43. At the interview, Ms. Goree was asked a short set of simple "standard" questions by Lindy Matskow and Steve Kline to which she provided appropriate answers.

44. At the close of the interview, Ms. Goree was asked if she had any questions.

45. Ms. Goree did ask Mr. Kline whether he valued the Penn State program as much as the International Baccalaureate program, to which Mr. Kline responded that he did not and that the International Baccalaureate program was for the "top shelf students."

46. Ms. Goree was surprised by this answer but said nothing further.

47. Ms. Goree had in fact facilitated the creation of the Penn State program, and in

8

2009, the Penn State program had significantly more African American students (7 out of 17 students) than the International Baccalaureate Program (one out of 25).

48. On July 10, 2009, Ms. Goree was informed in writing that she was not awarded the position for which she had applied.

49. Had she been hired, Ms. Goree would have been awarded an annual salary of approximately $87,691.00, plus benefits based on her experience and education.

50. Ms. Goree subsequently discovered that a younger Caucasian female, aged 26-27 years old, named Lindsey Smith (now named Lindsey Canuso), had been hired instead.

51. By way of contrast, while Ms. Goree possessed an MBA, degree in business education and a business education instructional certificate in addition to her eleven years teaching, Ms. Smith:

    a. had only been teaching 2.5 years;

    b. had no experience teaching business courses;

    c. did not possess a MBA;

    d. apparently did not possess a business education instructional certificate; and

    e. possessed certification only for duties other than classroom instruction, i.e. a certificate in information technology that would only qualify her for running a technology lab.

52. In addition, when Ms. Smith assumed her teaching duties, a student specifically recalls that Ms. Smith informed her class that she was learning the subject matter

with her students and admitted before another class that she did not have experience with MacIntosh computers.

53. When informed of the district's decision not to hire Ms. Goree, numerous parents complained and stated publicly their own distress that Ms. Goree had not been hired for the position.

54. After Ms. Goree had been replaced by a younger Caucasian individual, Mr. Kline refused to participate or devote school resources to the celebration of Martin Luther King Day, leaving student groups to initiate their own events, despite a district-wide mandate to honor the holiday.

55. In February of 2010, Kline again refused to participate or devote school resources to Black History Month, despite the Superintendent's specific instruction that schools create exhibits. Instead, the different departments decided to create a display in a glass case located in the student lounge recognizing great African Americans. Part of this display explained the Jim Crow laws and the history of the term "Mammy," which engendered complaints by African American students who found it offensive, and who complained without recourse until the Harriton Case Worker, an African American herself, complained to the Assistant Principal.

56. Had Ms. Goree been hired for the position, she would have earned $87,691.00 annually gross (Masters +15 years, i.e. Step 10 in the teachers union pay schedule), plus benefits.

57. As a direct and proximate result of Defendant's refusal to hire Ms. Goree, she has suffered loss of wages, extreme loss of sleep, loss of appetite and other

**10**

emotional distress.

## VI.   STATEMENT OF CLAIMS

### Count I:     Discrimination on the Basis of Race: unlawful failure to hire

58. Plaintiff hereby incorporates the foregoing paragraphs above by reference as if more fully set forth at length.

59. Defendant's failure to hire Plaintiff was unlawful under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., in that: (a) Plaintiff was a member of a protected class (i.e. African-American), (b) Plaintiff was qualified for the position for which she applied, (c) Plaintiff was not selected for the position for which she applied, (d) and persons outside the protected class were hired in the position instead of Plaintiff.

60. Defendant's actions also violate 42 U.S.C. §1983, insofar as Defendant deprived Plaintiff of the above rights secured by the laws of the United States, and Defendant was acting under color and/or custom or usage of law as a municipal agency.

### Count II:    Discrimination on the Basis of Age: unlawful failure to hire

61. Plaintiff hereby incorporates the foregoing paragraphs by reference as if more fully set forth at length.

62. Defendant's failure to hire Plaintiff was unlawful under the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621 et. seq., in that: (a) Plaintiff was a member of a protected class (i.e. older than 40 years old), (b) Plaintiff was qualified for the position for which she applied, (c) Plaintiff was not selected for the position for which she applied, (d) and persons outside the protected class were hired in the position instead of Plaintiff.

63. Defendant's actions also violate 42 U.S.C. §1983, insofar as Defendant deprived Plaintiff of the above rights secured by the laws of the United States, and Defendant was acting under color and/or custom or usage of law as a municipal agency.

**Count III:    Violation of the Pennsylvania Human Relations Act**

64. Plaintiff hereby incorporates the foregoing paragraphs by reference as if more fully set forth at length.

65. Defendant has violated the Pennsylvania Human Relations Act (43 P.S. § 955(a), et. seq.) insofar as it has terminated Plaintiff unlawfully from his employment for reasons prohibited by the Act, namely based upon Plaintiff's race and age as set forth above.

## V.    DAMAGES

**WHEREFORE** Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., 42 U.S.C. §§1981a, and 1983, Plaintiff seeks an order for back pay and compensation from loss of benefits as well as front pay, damages for emotional

distress, punitive damages, attorney's fees, costs and any and all other relief including but not limited to reinstatement that this Court deems proper. Pursuant to Eshelman v. Agere Systems, Inc., 2009 U.S. App. LEXIS 1947, 36-38 (3rd Cir. 2009), and this court's equitable powers, Plaintiff also seeks pre-judgment interest to be assessed on back pay as well as an additional award to offset the tax consequences of a lump sum payment of back pay.

Law Office of Cotlar & Cotlar
Steven A. Cotlar, Esq./ Attorney I.D. #01881
Andrew D. Cotlar, Esq. /Attorney I.D. #204630
23 West Court Street
Doylestown, PA 18901
(215)-345-7310

5/13/10
Date

*Attorney for Plaintiff*

13

**Exhibit A:**
**EEOC Discrimination Charge**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| X | EEOC | 530-2009-04100 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|

| State or local Agency, if any | S.S. No. | 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 |
|---|---|---|

| NAME *(Indicate Mr., Ms., Mrs.)* Ms. | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Besslindora Goree | 267-679-6076 |

| STREET ADDRESS        CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 200 N. Wynnewood Ave., Apt. B213, Wynnewood, PA 19096 | 11/21/1961 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Lower Merion School District | Approximately 200 | 610-645-1800 |

| STREET ADDRESS        CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 301 E. Montgomery Ave., Ardmore, PA 19003 | Montgomery |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS        CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| | | |
|---|---|---|
| [X] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [X] AGE |
| [ ] RETALIATION | [ ] NATIONAL ORIGIN | [ ] DISABILITY | [ ] OTHER *(Specify)* | |

| DATE DISCRIMINATION TOOK PLACE | EARLIEST (ADEA/EPA) | LATEST (ALL) |
|---|---|---|
| July 10, 2009 | | |

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See attached "Statement of Besslindora Goree in support of EEOC Charge of Discrimination," which is incorporated by reference herein.

RECEIVED - EEOC
PHILADELPHIA D.O.
09 SEP -1 PM 2:08

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date *Besslindora Goree* 8/20/09
Charging Party *(Signature)*

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

EEOC FORM 5 (Test 10/94)

SEP 21 2009

<u>Statement by Besslindora Goree in support of EEOC Charge of Discrimination</u>

Besslindora Goree is a 47-year-old African-American female and was hired on August 18, 2008 at a salary of $79,491.00 per year by the Lower Merion School District (LMSD) as a long-term substitute to teach business and information technology courses classes. Ms. Goree possesses a Masters in Business Administration (MBA) from DeSales University, a B.S. degree in business education from Gwynedd Mercy College, and a Pennsylvania Department of Education Business Education instructional II certificate.

Ms. Goree was recruited to move from her prior teaching position in Broward County, Florida and moved to Pennsylvania in specific reliance upon promises made by LMSD personnel that her long-term substitute position would result in long-term tenured employment with LMSD the next academic year. The personnel who made these representations were Dr. Martha ("Marty") Yoder (Director of Human Resources), Steven Kline (Principal of Harriton High School), Lindy Matskow (Assistant Principal, Harriton High School), and Steven Barbado (Director of Curriculum).

Once at Harriton, Ms. Goree performed in her position in an exemplary fashion, garnering a large following among her students and among parents of her students who praised her teaching abilities. Ms. Goree also volunteered for a number of activities and helped run the school store as well. Ms. Goree was also the sponsor for the FBLA and Mock Trial club. Moreover, Ms. Goree initiated an arranged a partnership between Pennsylvania State University-Brandywine and LMSD for a dual enrollment program, which was developed and implemented by Ms. Goree to allow Harriton High School students to receive up to 13 college credits while enrolled, with four college courses being taught by a Penn State University professor at Harriton High School during the school day. Ms. Goree was so successful in implementing this program that she recruited 17 students for the inaugural year when only 10 were required. Throughout her tenure, Ms. Goree received nothing but exemplary reports upon observation of her teaching by her supervisor Dan Nerilli, Assistant Principal.

However, once hired as a long-term substitute, Ms. Goree was not provided with the usual support accorded Caucasian teachers. For instance, unlike Caucasian teachers, she was not assigned an experienced teacher (a "buddy") to help her become familiar with district policies and procedures. Other newly hired teachers who were not minorities were assigned such support. Additionally, Ms. Goree was assigned approximately 150 students, while the Caucasian business teacher was assigned approximately 90 students. And when some parents did complain about their children's' grades, the Principal Mr. Kline did not immediately support Ms. Goree's decisions but simply reassigned the child to another teacher, despite the school's policy of not changing teachers' student assignments.

Moreover, it quickly became apparent to Ms. Goree that Harriton's Principal, Mr. Kline, was well-known to be a racist. Prior to becoming the principal of Harriton, Mr. Kline was the subject of a lawsuit alleging racial discrimination by an African-American teacher named Brenda Fortes at Boyertown Area School District, an area that possesses such historical and

continuing ties to hate groups like the Ku Klux Klan that the Pennsylvania Human Relations Commission recently reported it as being located in one of the top five counties for the number of hate-related incidents. In this case, Ms. Fortes alleged that Mr. Kline repeatedly used racial slurs and derogatory references and comments about African-Americans and replaced Ms. Fortes with a female Caucasian teacher with less education and experience. This case concluded with judgment being entered against Mr. Kline and others by consent.

At Harriton High School, there were numerous racial incidents in which Mr. Kline was involved. For instance, Ms. Carla Coleman, an African-American female guidance counselor, observed Mr. Kline's continuing racial bias towards African-Americans students first-hand. In particular, Ms. Coleman was verbally reprimanded for questioning Mr. Kline's eagerness to remove an African-American female student after an incident that occurred off-campus when school policy would have mandated an initial inquiry. Thereafter, Ms. Coleman felt so threatened by Mr. Kline's racial attitudes that she would not meet with Kline without a third party present. It was Ms. Coleman's considered opinion that Mr. Kline had a problem with strong African-American women. Additionally, Hal Smith, a former ten-year veteran African-American math teacher and football coach, was terminated because of Mr. Kline's racist behavior. In this regard, in 2006, Mr. Kline summarily replaced Mr. Smith with a Caucasian man as football coach. When asked for the reasons for this action, Mr. Kline informed Mr. Smith that he had used vulgar language towards students and did not care about the students, despite Mr. Smith's extensive participation as a math teacher, mentor and tutor for Harriton Students since 1996. Mr. Smith's replacement continues to coach today despite numerous complaints from parents and students about his of vulgar language.

LMSD has historically had problems with race relations and proper recruitment and retention of minority teachers. In 2001, the last time such figures were publicly announced, only four new teacher hires minorities (6.1%) with the number of minority staff increasing from 5.7% in 1989 to a mere 7.5% in 2001. These problems have caused concerned parents and community groups to form CARE (Committee to Address Race in Education) to address these concerns. Additionally, race relations continue to be problematic at present in light of a controversial bussing program in place in the District that is supported by some and opposed by some community members. Importantly, since 2006, when Mr. Kline became Principal at Harriton, no African-American teachers (other than Ms. Goree) have been hired at that school.

On May 19, 2009, Ms. Goree received formal notice that her temporary position would expire effective June 18, 2009. On June 1, 2009, LMSD posted a position vacancy online for a tenure-track teacher of high school business classes—a position identical to the position Ms. Goree has filled as a long-term substitute. This position required a business education instructional certificate, which Ms. Goree possessed. Ms. Goree immediately applied for the open position on June 2, 2009. On July 6, she was called for an interview on the 7th at 1:30 P.M. Because of the short notice, this was rescheduled for July 9 at 8:30 A.M. When Ms. Goree arrived for the interview, the usual entrance to the facility near the Principal's office was locked. Ms. Goree called the secretary on her cell phone and then walked to a secondary door in a few minutes. At the interview, Ms. Goree was asked a short set of simple

"standard" questions by Linda Matskow and Steve Kline to which she provided appropriate answers. At the close of the interview, Ms. Goree was asked if she had any questions. She did ask Mr. Kline whether he valued the Penn State program as much as the International Baccalaureate program, to which Mr. Kline responded that he did not and that the International Baccalaureate program was for the "top shelf students." Ms. Goree was surprised by this answer but said nothing further. Ms. Goree had in fact set up the Penn State program, and in 2009, the Penn State program had significantly more African American students (7 out of 17 students) than the International Baccalaureate Program (one out of 25).

On July 10, 2009, Ms. Goree was informed in writing that she was not awarded the position for which she had applied. Had she been hired, Ms. Goree would have been awarded an annual salary of approximately $87,691.00, plus benefits based on her experience and education. Ms. Goree subsequently discovered that a younger Caucasian female, aged 26-27 years old, named Lindsey Smith, had been hired instead. By way of contrast, while Ms. Goree possessed an MBA, degree in business education and a business education instructional certificate in addition to her eleven years teaching, Ms. Smith had only been teaching 2.5 years and had no experience teaching business courses, did not possess a MBA, apparently did not possess a business education instructional certificate and possessed certification only for duties other than classroom instruction, i.e. a certificate in information technology that would only qualify her for running a technology lab.

When Ms. Goree inquired in writing as to the reasons why she was not chosen, Dr. Martha Yoder, Director of Human Resources replied in writing on July 27, 2009, stating incorrectly that Ms. Goree was late to the interview, used incorrect grammar during the interview and that her responses to questions posed were inconsistent with observations of her performance during the school year. Ms. Goree denies the above allegations. Dr.. Yoder also recollected oral conversations between Mr. Kline and Ms. Goree concerning her failure to report to the assigned collaborative teacher team (the "buddy" referenced above), when in fact Ms. Goree had not been assigned to such a team at all. Dr. Yoder also recollected the complaint from a single parent that Ms. Goree used poor grammar on one occasion, Ms. Goree's alleged refusal to follow Business Education Department grading practices, and Ms. Gorees' alleged reluctance to accept unspecified suggestions or recommendations from colleagues or administrators. Ms. Goree denies all of these allegations.

As a result of Defendant's refusal to hire Ms. Goree, she has suffered loss of wages, extreme loss of sleep, loss of appetite and other emotional distress. When informed of the district's decision, numerous parents complained and stated publicly their own distress that Ms. Goree had not been hired for the position.

Had Ms. Goree been hired for the position, she would have earned $87,691.00 annually gross (Masters +15 years, i.e. Step 10 in the teachers union pay schedule), plus benefits. Ms. Goree seeks an order for back pay and compensation from loss of benefits as well as front pay, damages for emotional distress, punitive damages, attorney's fees, costs and any and all other relief, including but not limited to reinstatement, that this Court deems proper. Plaintiff also seeks pre-judgment interest to be assessed on back pay as well as an additional award to offset the tax

consequences of a lump sum payment of back pay.

**Exhibit B:**
**EEOC Dismissal and Notice of Rights**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market St., Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2847 & 2632

Our Reference: Charge Number 530-2009-04100
                   Goree v. Lower Merion School District

Ms. Besslindora Goree
200 N. Wynnewood Ave.
Apt. B-213
Wynnewood, PA 19096

Dear Ms. Goree:

The above-referenced charge has been filed with the Equal Employment Opportunity
Commission ("EEOC") under both Title VII of the Civil Rights Act of 1964, as amended ("Title
VII") and the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

Your attorney has requested that the EEOC issue you a Notice of Right to Sue for this charge.
As explained in the enclosed letter, the EEOC has forwarded to the U.S. Department of Justice
("DOJ") your request for a Notice of Right to Sue with respect to the Title VII portion of the
charge. Please refer to that letter for further information concerning that issuance by the DOJ.

However, if you also wish to file suit under the ADEA you may do so without any further Notice
form EEOC or from the DOJ. Based on your attorney's indicated intent to file a private ADEA
lawsuit in this matter, EEOC is hereby administratively closing this charge under the ADEA and
terminating all processing. Therefore, this letter constitutes notice of EEOC's dismissal for the
ADEA portion of the charge. Any 90-day period applicable to this charge during which a private
lawsuit may be filed under the ADEA begins upon your receipt of this notification of dismissal.

If there are any questions in this regard, please contact Frances Watson, Supervisory Investigator,
at (215) 440-2649

Sincerely,

_April 30, 2010_                          _William D. Cook_
Date                                       William D. Cook
                                           Enforcement Manager

cc:  Andrew D. Cotlar, Esq. (For Charging Party)
     Megan E. Shafer, Esq. (For Respondent)

enclosure



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5066 4220

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

May 7, 2010

Ms. Bess Lindora Goree
c/o Andrew D. Cotlar, Esquire
Law Offices of Cotlar & Cotlar
Attorney at Law
23 West Court Street
Doylestown, PA  18901

MAY 1 2 2010

'MAY 1 3 2010

Re:  EEOC Charge Against Lower Merion School District
      No. 530200904100

Dear Ms. Goree:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

     If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

     The investigative file pertaining to your case is located in the EEOC
Philadelphia District Office, Philadelphia, PA.

     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

                         Sincerely,

                         Thomas E. Perez
                    Assistant Attorney General
                       Civil Rights Division

           by  *Karen J. Ferguson*

                    Karen L. Ferguson
                Supervisory Civil Rights Analyst
                Employment Litigation Section

cc: Philadelphia District Office, EEOC
    Lower Merion School District

# VERIFICATION Pursuant to 28 U.S.C. 1746

I, Besslindora Goree, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/Besslindora Goree                                   3/1/2010

Besslindora Goree                                    Date